# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

STEPHON D'COLE LEWIS,

       Plaintiff,                CASE NO. 18-11927
                                 HON. DENISE PAGE HOOD

v.

PAUL JAMES O'CONNER,
MATTHEW WAYNE MINARD,
and CITY OF TAYLOR,

       Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION
## TO DISMISS AND FOR SUMMARY JUDGMENT [ECF Nos. 27, 28]

## I.    INTRODUCTION

Plaintiff filed this action on June 18, 2018, alleging that Defendants' conduct violated his rights, including: (1) unlawfully detaining and seizing Plaintiff and his vehicle, in violation of the Fourth Amendment; (2) false imprisonment; (3) false arrest; (4) malicious prosecution; and (5) civil conspiracy. On April 22, 2019, after being granted leave to amend, Plaintiff filed a First Amended Complaint, to which Defendants filed an Answer on April 30, 2019. ECF Nos. 24, 26. On May 14, 2019, Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted and Motion for Summary Judgment, with an Errata Sheet filed the same day (collectively, the "Motion"). ECF

Nos. 27, 28.  For the reasons that follow, the Court grants the Motion.

## II.      BACKGROUND

On April 12, 2016, Defendants Matthew Wayne Minard ("Minard") and Paul James O'Conner ("O'Conner") were in The Parks at the Villages of Taylor ("The Parks") in Defendant City of Taylor, Michigan (the "City"), on a patrol detail for the owner McKinley & McKinley Properties Management ("McKinley"). ECF No. 30, PgID 480-81 (Ex. 5).  The City had an agreement with McKinley to patrol The Parks (the "Agreement").  *Id.* at 483-84.  Patrol detail means patrolling the complex for any and all enforcement actions available, including running stop signs.  *Id.* at PgID 482. Prior to April 12, 2016, Minard had patrolled, and been on other details, at the Parks. *Id.*

Minard and O'Conner were in uniform, in a two-person police vehicle working overtime for the City under the Agreement.  *Id.* at 483.  They stopped Plaintiff for disobeying a stop sign.  *Id*. at 489.  When the officers were talking to the vehicle occupants, Minard smelled marijuana coming from inside the vehicle.  *Id.* at 493. Backup arrived, but Minard could not identify who smelled of marijuana.  *Id.* at 493-94.  The street upon which Plaintiff was driving, Park Village Boulevard, is on private property open to the public, and the traffic laws enforceable there are any agreed upon by the owner and the enforcing entity.  *Id.* at 495.  Minard did not know how many

other cars he had stopped for disobeying a stop sign in The Parks or whether he ever issued a ticket for that offense. *Id.* at 496, 497.

In 2002 or 2003, Minard received in-service traffic enforcement training from the City but that did not include training regarding the requirements of the Michigan Manual of Uniform Traffic Control Devices ("MMUTCD"). O'Conner was trained on the requirements of the MMUTCD, and he was aware traffic signs had to satisfy certain standards to be enforceable, including traffic signs on private property open to the public. Neither Minard nor O'Conner was aware: (a) of the height of the stop sign at issue; or (b) that the stop sign at issue did not meet the requirements of the MMUTCD.

## III. APPLICABLE LAW & ANALYSIS

## A. Rule 12(c)

Defendants' motion to dismiss is premised on the failure to state a claim upon which relief can be granted, and they cite Federal Rule of Civil Procedure 12(b)(6). As discussed below, although the Rule 12(b)(6) standard is the appropriate standard to be used, the motion to dismiss should have been filed as a motion for judgment on the pleadings pursuant to Rule 12(c) because Defendants filed their Answer to the First Amended Complaint before filing the Motion. *See* Rule 12(b) ("A motion asserting any of these defenses [under Rule 12(b)] must be made before pleading if

a responsive pleading is allowed."); Rule 12(b)(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."). In deciding a motion brought pursuant to Rule 12(c), the standard is the same as that used in evaluating a motion brought under Fed.Civ.P. 12(b)(6). *See, e.g., Stein v U.S. Bancorp, et. al*, 2011 U.S. Dist. LEXIS 18357, at *9 (E.D. Mich. February 24, 2011).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. The Court must accept all well-pleaded factual allegations as true and review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.   Rule 56**

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A

court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV. ANALYSIS

### A. Reasonableness of the Traffic Stop

In Counts One and Two, Plaintiff alleges that Minard and O'Conner violated Plaintiff's Fourth Amendment rights. Defendants argue that the traffic stop of Plaintiff was reasonable because the officers witnessed Plaintiff: (a) fail to stop at a posted stop sign; and (b) drive through the intersection without stopping to look for oncoming traffic. Minard and O'Conner state that they made the traffic stop because Plaintiff disobeyed the posted stop sign. Defendants also argue that the officers could have stopped Plaintiff for careless driving. For these reasons, Defendants contend that the officers had a reasonable basis for making a Fourth Amendment traffic stop.[1]

Plaintiff counters that the officers did not have statutory authority to stop Plaintiff because the stop sign was not posted properly, as it was not in compliance with the Michigan Vehicle Code ("MVC"). Specifically, Plaintiff argues that the MMUTCD requires that the bottom of a posted stop sign be seven (7) feet above the

---

[1]Defendants also argue that the Court should Plaintiff's contention that the officers had no right to make a traffic stop because the stop sign was on a private road. *See, e.g.,* ECF No. 28, PgID 331, 333-35, 338-39. Plaintiff does not, however, address that issue in his response, and Plaintiff made no specific claim based on the underlying events taking place on private property. Rather, any "private property" relevance appears to exist only in the context of the height of the stop sign at issue.

ground. Plaintiff asserts that the stop sign he allegedly disobeyed had a bottom height of less than four (4) feet above the ground. Plaintiff contends that a key (material) issue – whether it was objectively reasonable for the officers to seize Plaintiff for disobeying a patently defective stop sign – is in dispute, such that the case should not be dismissed.[2]

Defendants argue that Plaintiff's Fourth Amendment rights were not violated by the traffic stop because the stop was reasonable based on Plaintiff failing to stop at the posted stop sign. Citing *Heien v. North Carolina*, 574 U.S. 54, 135 S.Ct. 530, 536 (2014) (citing *Riley v. California*, 573 U.S. 373, 381 (2014) (citations and quotations marks omitted) (the "ultimate touchstone of the Fourth Amendment is reasonableness")). "[O]fficers need only reasonable suspicion–that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law." *Heien*, 135 S.Ct. at 536 (internal citations and quotations omitted). The stop only need be objectively reasonable; an officer's subjective reason(s) for the stop do not validate or invalidate the legal justification for the stop. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Defendants argue that, because the officers witnessed Plaintiff fail to comply

---

[2]Plaintiff's brief commences with the statement: "The dispositive issue here is a question of material fact in dispute: would an objectively reasonable person recognize that a posted stop sign is more than 3 feet shorter than the 7-foot mandatory bottom height imposed by state law."

with the posted stop sign and drive through the intersection without stopping, they objectively could have stopped Plaintiff for either disobeying a stop sign <u>or</u> careless driving.

Plaintiff notes that, under Sixth Circuit law, an officer can only make a traffic stop if the officer has probable cause to believe that a person committed a civil traffic violation or has reasonable suspicion that the person had committed a crime. *Cruise-Gulyas v. Minard*, 918 F.3d 494, 496 (6th Cir. 2019). Without identifying any provision of the MMUTCD, Plaintiff asserts that it is undisputed that the MMUTCD requires that the bottom of a stop sign have a minimum height of seven (7) feet above the ground. Plaintiff contends that the stop sign at issue was not a traffic control device at all because it did not comply with the MMUTCD. Citing M.C.L. § 257.70, 257.611(1), 257.601a(2).

Defendants state that it does not matter whether Michigan law allows officers the ability to enforce a stop sign of improper height. Relying on *Whren v. United States*, 517 U.S. 806, 815 (1996) (a traffic stop is not unreasonable because the regulations did not permit a plainclothes officer to enforce traffic laws). Defendants argue that Michigan law permits officers to enforce stop signs on private roads if the stop signs meet the requirements of the MMUTCD, M.C.L. § 257.906 ("a police officer may enter upon such a private road to enforce violations of this act"), and that

8

M.C.L. § 247.601(a)(2) is subject to Section 257.906. ECF No. 28, PgID 339 (citing 2003 Mich. Op. Att'y Gen. No. 7138 (Sept. 23, 2003)). Defendants claim that the deficiency in the stop sign height does not preclude officers from enforcing that stop sign because what matters is whether "the signs [are] sufficiently legible as to be seen by an ordinarily observant person," not precise conformity with the MMUTCD. Citing M.C.L. § 257.606(4).

Plaintiff argues that he was not committing a violation of the Motor Vehicle Act because he did not disobey the instructions of a properly posted stop sign, but this argument misses the issue. The issue is whether reasonable officers in the position of Minard and O'Conner would have believed that Plaintiff had committed a traffic violation.

Plaintiff contends that the 2002 Michigan Attorney General Opinion cited by Defendants has no bearing on this case because Minard and O'Conner did not stop Plaintiff for careless driving, which is a distinct violation from disobeying a stop sign. Plaintiff contends that Defendants go too far in suggesting that the officers could have cited him for careless driving without any facts showing the likelihood of endangering persons or property, one of the required elements for careless driving. Citing M.C.L. § 257.626b. But, as Defendants argue, courts (including the U.S. Supreme Court) have held that if officers have a reasonable basis for pulling someone over, that is

sufficient, even if that was not the reason they made the stop in the first place. *See, e.g., Devenpeck*, 543 U.S. at 153 (for Fourth Amendment purposes, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"); *Whren*, 517 U.S. at 814-15; *Marrs v. Tuckey*, 362 F.Supp.2d 927, 932 (E.D. Mich. 2005); *City of Lansing v. Savage*, No. 286405, 2009 WL 3365916, at *2 (Mich. Ct. App. Oct. 20, 2009). Defendants contend that Plaintiff's conduct in failing to stop also constituted careless driving, such that the officers had probable cause to make the stop.

Defendants claim that the officers, at most, made a mistake of law when initiating the traffic stop for disobeying the posted stop sign. Defendants argue that a reasonable mistake of law is not sufficient to support a Fourth Amendment claim. *Heien*, 135 S.Ct. 540 (although North Carolina law required only one functioning brake light, the officer's mistake in stopping plaintiff was a reasonable mistake of law because the state law at issue was ambiguous). Defendants suggest that the laws governing the enforcement of signs on private property is ambiguous,[3] contain internal cross-references, and require consultation of the 800-plus page MMUTCD.

---

[3]Defendants note that M.C.L. § 257.601a(2) provides that enforcement of the Motor Vehicle Code on private roads requires an agreement with the owner of the property, but M.C.L. § 257.906 provides that, notwithstanding any other law, officers can enter private property to enforce violations of the Motor Vehicle Code and M.C.L. § 257.606(4) requires that signs be sufficiently visible in order to be enforced.

Plaintiff argues that Defendants' claim of mistake of law based on the officers' belief that they could stop a motorist for disobeying a stop sign is misplaced "because an objectively reasonable person would not believe a less than 4-foot tall stop sign is 7-foot." ECF No. 30, PgID 380. Plaintiff contends that the officers could not have had a reasonable suspicion to stop Plaintiff because the deficient stop sign at issue did not constitute a traffic control device under state law, such that disobeying it would not violate the law. Plaintiff states that an objectively reasonable officer properly trained in enforcing state traffic laws would recognize that the stop sign at issue was not proper. Citing *Nothrup v. City of Toledo Police Dep't*, 785 F.3d 128, 1132 (6th Cir. 2015) (If citizens are presumed to know the parameters of criminal laws, it is appropriate to expect law enforcement officers to know them – if they are unambiguous statutes). Plaintiff asserts that the officers have not argued or introduced evidence that the probable cause for stopping Plaintiff was based "on a mistaken understanding of the scope of a legal prohibition." *Heien*, 135 S.Ct. at 536.

## B.  Qualified Immunity

Defendants argue that the officers are entitled to qualified immunity. As recently stated by the Supreme Court:

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A clearly established right is one that is sufficiently clear that every

reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations and quotation marks omitted).

Qualified immunity is a two-step process. *Saucier v. Katz*, 533 U.S. 194 (2001). First, the Court determines whether, based upon the applicable law, the facts viewed in a light most favorable to the plaintiff show that a constitutional violation has occurred. Second, the Court considers whether the violation involved a clearly established constitutional right of which a reasonable person in the defendant's position would have known. *Saucier v. Katz, supra*.; *Sample v. Bailey*, 409 F.3d 689 (6th Cir. 2005). Only if the undisputed facts or the evidence, viewed in a light most favorable to the plaintiff, fail to establish a prima facie violation of clear constitutional law can this court find that the Defendants are entitled to qualified immunity. *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997).

Once a government official has raised the defense of qualified immunity, the plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (citation omitted). A plaintiff also must establish that each individual defendant was "personally involved" in the specific constitutional violation.

*See Salehphour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998); *Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004) (unpublished) ("It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the each of the named defendants").

Defendants maintain that the officers are entitled to qualified immunity because there was no clearly established law indicating that the traffic stop in this case violated the Fourth Amendment. Defendants argue that the traffic stop was reasonable, so there was no constitutional violation because: (1) Plaintiff was carelessly driving; and (2) there was a stop sign that Plaintiff failed to obey, even if it was not posted in conformance with the MMUTCD. Defendants also contend that, even if there was a constitutional violation, it was not clearly established. Defendants note that Plaintiff has not set forth any case law or precedent that sets forth the right Plaintiff advocates. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1043-44 (6th Cir. 1992) ("in the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent"). Defendants also suggest that the varying law and sources of law applicable to traffic stops on private property with respect to stop sign with an allegedly improper height does not clearly establish the law the officers were to follow with respect to the event at issue in this case (Plaintiff not stopping at the posted stop sign).

Plaintiff states that, as the officers stopped him without probable cause to believe a civil traffic violation had occurred and as they had no reasonable suspicion of a crime, the stop violated clearly established Fourth Amendment rights. *Heien*, 135 S.Ct. at 536; *Cruise-Gulyas*, 918 F.3d at 496. Plaintiff argues that it was clearly established that a traffic stop is a seizure under the Fourth Amendment, such that the officers knew they needed probable cause to make the stop. Plaintiff contends that, as Michigan law requires that a stop sign have a minimum seven-foot bottom height, it is a question of material fact for the jury whether an objectively reasonable officer would be on notice that the stop sign at issue was unenforceable because the bottom of the stop sign was not even four feet off the ground. Plaintiff contends that Minard and O'Conner knowingly violated the law and were plainly incompetent in doing so. Plaintiff concedes, however, that he "found no decisions of the Michigan Supreme Court, or any state court for that matter, interpreting the interplay of the traffic laws involved here." ECF No. 30, PgID 375.

The Court concludes that Minard and O'Conner are entitled to qualified immunity. Even if they lacked the authority to enforce a person's failure to stop at the stop sign at issue, it is not clear that a reasonable officer would know that he or she was violating the constitutional rights when stopping the driver for failing to stop. There is no case law or binding precedent regarding that scenario, which is critical to

Plaintiff's burden of showing that the officers were not entitled to qualified immunity. *Russo*, 953 F.2d 1043-44; *Whren*, 517 U.S. at 815. Because there is no authority regarding the interplay between law enforcement of private roads open to the general public where a stop sign is not properly erected, the Court finds that the officers could not have violated a clearly established constitutional right. The fact that there are multiple applicable, and at times inconsistent, statutes relevant to a failure to stop at a traffic control device on private property also fails to afford a reasonable officer of notice that a stop such as the one at issue in this case would violate a driver's constitutional rights. Accordingly, the Court concludes that the officers were not on notice that stopping Plaintiff for disobeying the stop sign "would be clearly unlawful, [such that] summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202.

## C.    City Liability

In Counts Six and Seven, Plaintiff alleges *Monell* liability claims against the City. Defendants claim that Plaintiff has failed to present any facts that show that the City had a policy, practice, or custom that violated Plaintiff's Fourth Amendment rights. Plaintiff argues that the City has no immunity and summary judgment is premature because Plaintiff has had no discovery on this issue.[4] Plaintiff suggests that

---

[4]Discovery closed on April 9, 2019.

the Agreement between the City and The Parks, which provided that City officers would patrol The Parks, constituted a municipal policy or regulation, and that policy or regulation resulted in the injury suffered by Plaintiff.

A municipal defendant can only be subject to direct liability if it causes the constitutional harm because it "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by" that body's officers. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Id.* at 694. A plaintiff cannot allege a viable claim based solely on vicarious liability or *respondeat superior*. *Id.* at 691. The municipality's policy (or absence of one) must be a "moving force" in the deprivation of the plaintiff's constitutional rights **and such policy must have arisen from "deliberate indifference" to the rights of its citizens**. *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996) (emphasis added).

In addition to policy or custom, the inadequacy of police training may serve as a basis for Section 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *Canton v. Harris*, 489 U.S. 378, 388 (1989). The question is "whether the training program

is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *Id*. at 390.

Defendants first argument is that the claims against the City must fail because there was no underlying Fourth Amendment violation by the officers. *Ross v. Duggan*, 402 F.3d 575, 590-91 (6th Cir. 2004) ("municipal liability cannot be imposed against any defendant for any of the . . . alleged, but nonexistent, constitutional wrongs"). Defendants argue that the Court must reject Plaintiff's suggestion that the Agreement established a custom or policy the City. Defendants assert that the Agreement requires City officers to "patrol" the apartment grounds at The Park, but it does not specify how City officers were to enforce any laws, including the failure to obey stop signs.

Defendants next argue that Plaintiff has not submitted evidence that the City failed to train its officers. The evidence establishes that the officers received training regarding the Michigan Vehicle Code and the MMUTCD, and Plaintiff does not set forth evidence: (a) of how or why such training was inadequate; or (b) that such inadequate training was the result of deliberate indifference by the City. Defendants argue that there is no evidence that the City had been made aware that any of its officers were enforcing stop signs that were too short, such that the City could have made the deliberate choice to ignore the constitutional rights of its citizens. *Connick*

*v. Thompson*, 563 U.S. 51, 62 (2011) ("Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

Plaintiff argues that it has sufficiently alleged that the City has inadequately trained and supervised its officers based on deliberate indifference to the rights of persons with whom the officers come in contact because the City had notice that the officers had not had traffic enforcement training since 2002 or 2003. Plaintiff relies on the following allegations:

> (1) the City's final decision maker chief of police entered into the contractual relationship with the apartment complex, (2) supervisors reviewed the report and approved of the illegal traffic stop of Lewis, (3) O'Connor has stopped, wrote tickets for, and seen other officers stop motorists for disobeying stops signs in the apartment complex, (4) supervisors instructed O'Connor to patrol the apartment complex and enforce traffic violations there, (5) the City trained O'Connor on the MMUTCD but not Minard, (6) Minard had no in service traffic enforcement training since 2002-2003, (7) O'Connor and Minard differ on the scope of their authority under state law to enforce the MVC on private property, and (8) neither recognized the stop sign Lewis allegedly ran was short by more than 3 feet but both knew there was a minimum height required for enforceability.

ECF No. 30, PgID 385.

The Court finds that Plaintiff has not satisfied its burden regarding pleading *Monell* liability. Even if all of Plaintiff's allegations are accurate, there is no

allegation (or evidence) to suggest the City was aware that its officers were writing tickets for improper traffic stops due to persons disobeying the stop sign at issue (or stop signs in The Parks generally). In the absence of any such notice, the City cannot be said to have been deliberately indifferent to the rights of persons who did not stop at the stop sign at issue (or stop signs in The Parks generally).

Accordingly, the Court grants Defendants' motion to dismiss the *Monell* claims against the City.

## D.     Other Claims

In his Amended Complaint, Plaintiff includes claims for false imprisonment, false arrest, malicious prosecution, and civil conspiracy (Counts Three, Four, Five, and Eight, respectively). Although each of those four claims is traditionally a state law claim, Plaintiff alleges that: (1) each of Counts Three, Four, and Five is in violation of "Federal Common Law" and deprived him of – or violated his – "fundamental liberty interests;" and (2) Count Eight is being brought pursuant to 42 U.S.C. § 1983.

In the briefing on the Motion, neither party specifically addresses the false imprisonment, false arrest, malicious prosecution, or civil conspiracy claims. The Court finds, however, that each of those claims is predicated on the Fourth Amendment and municipal liability claims alleged in Counts One, Two, Six, and

Seven, all of which the Court has dismissed, for the reasons set forth above. Accordingly, the Court also dismisses Counts Three, Four, Five, and Eight, based on qualified immunity (as it relates to Minard and O'Conner) and the absence of *Monell* liability (as it relates to the City).

## IV.    CONCLUSION

For the reasons stated above,

IT IS ORDERED that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted and Motion for Summary Judgment [ECF Nos. 27, 28] is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's cause of action is DISMISSED WITH PREJUDICE.

IT IS ORDERED.

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

November 19, 2019